IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

MARTIN L. HARRELL,           :
                                     :

      Petitioner,         :
                                     :

                                     :

VS.                      :       **28 U.S.C. ▪ 2255 Case No.**
                                   :         1 : 08-CV-90021 (HL)
                                   :

UNITED STATES OF AMERICA,   :       **Criminal Case No.**
                                   :         1 : 07-CR-45-001 (HL)
                                   :

                                   :

      Respondent.       :

## ORDER and RECOMMENDATION

Petitioner=s Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. ▪ 2255, filed on August 11, 2008 (Doc. 465), is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

### Procedural History

By means of a superseding indictment, the Petitioner was indicted in this Court on October 21, 2005, and charged with three counts of Hobbs Act violations, one count of interstate travel in aid of racketeering, one count each of arson, mail fraud, and conspiracy to commit arson and mail fraud, three counts of witness tampering, and one count of making misleading statements. (Doc. 65). By Order dated December 7, 2005, the arson-related counts were severed from the Hobbs Act-related counts, and the arson-related counts proceeded to trial on February 21, 2006. (Doc.

118).  Following this jury trial, the Petitioner was convicted on four counts as follows:

conspiracy to commit arson and mail fraud, arson, one count of witness tampering, and one count

of making misleading statements.  (Doc. 223).

On May 17, 2006, prior to the trial on the Hobbs Act counts, the Petitioner pled guilty to

one count of conspiracy to commit Hobbs Act violations.  (Doc. 317).  Petitioner waived his right

to appeal the conviction on the arson counts, and the Government dismissed the remaining Hobbs

Act counts.  (Doc. 318).  Petitioner was sentenced to a total of 240 months on both the arson and

Hobbs Act convictions and was ordered to pay restitution in the amount of $319,145.10.  (Doc.

358).  On August 29, 2006, the Petitioner filed an appeal, raising as error the order for restitution

(Doc. 366), which was upheld by the Eleventh Circuit in an Order filed July 10, 2007.   (Doc.

444).

In his ▪ 2255 motion, Petitioner alleges that he received ineffective assistance of counsel at

trial and on appeal.  (Doc. 465).  The Court appointed counsel to represent Petitioner on the ▪

2255 motion and held an evidentiary hearing on the motion on January 15, 2009.  (Doc. 486).

Following the preparation of a transcript of the initial evidentiary hearing proceedings, it became

clear that portions of the hearing testimony had not been properly recorded, preventing

transcription of said testimony, and the Court ordered a supplemental evidentiary hearing.  (Doc.

553).  Said supplemental hearing took place on November 1, 2011.  Both parties have filed briefs

in support of their positions.  (Docs. 501, 503, 504, 599, 600, and 618-1).  In his ▪ 2255 motion,

as outlined by the Court in the Order dated August 3, 2011 (Doc. 553), Petitioner raises

allegations of ineffective assistance of counsel at trial and on appeal, asserting that counsel

Edward Meeks suffered a conflict of interest and as a result:

1. altered his planned defense of the Petitioner by excluding prospective defense witness John Dollar,

2. ceased investigation into audiotapes of conversations between the Petitioner and prosecution witness Dennis Weaver, and

3. failed to file a direct appeal of Petitioner's jury trial convictions.

(Doc. 553).

In earlier filings Petitioner appeared to have sought permission to amend his claims, and the Court provided Petitioner with an opportunity to clarify his intentions and to establish the basis for any amendment by a date certain (Doc. 553). His requests to amend have been considered and denied (Doc. 578) and no further consideration of additional claims will take place herein.

This § 2255 motion has been pending since August 2008, and two evidentiary hearings and briefing schedules have been completed herein. Throughout this almost four (4) year period, Petitioner has had the benefit of counsel and ample opportunities to file motions and to seek to amend his claims. Current counsel for the Petitioner did not seek an extension to file the various motions now pending before the Court, and establishes no reason as to why these motions could not have been filed years earlier in these proceedings. Petitioner's Motion to Amend (Doc. 609) was filed after the expiration of both the statutory limitations period and the Court's extended deadline for amendment, and the Court is not inclined to allow Petitioner to continue to prolong the litigation of this matter. Accordingly, Petitioner's Motion to Amend (Doc. 609), Motion to Strike (Doc. 610), Motion to Seal (Doc. 612), Motion to Adopt (Doc. 613), Motion for Production (Doc. 614), and Motion to Produce (Doc. 615), all filed after the given deadline to

3

amend and all filed after the expiration of the briefing schedule following the second evidentiary

hearing herein, are **DENIED**.

### Legal Standards

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. ▪ 2255.

If a prisoner=s 2255 claim is found to be valid, the Court Ashall vacate and set the judgment aside

and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as

may appear appropriate.@ *Id.*

In order to establish that his counsel's representation was constitutionally defective, the

Petitioner must show (1) that his counsel's representation was deficient, and (2) that the Petitioner

was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466

U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985).

"Our role in collaterally reviewing [] judicial proceedings is not to point out counsel's

errors, but only to determine whether counsel's performance in a given proceeding was so beneath

prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the

sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989). AA fair

assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689.

The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

> [A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.  . . . It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding  . . [rather][t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

*Strickland*, 466 U.S. at 693-694.

In evaluating whether Petitioner has established a reasonable probability that the outcome would have been different absent counsel's alleged errors, a court "must consider the totality of the evidence before the judge or jury." *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002).

5

"As to counsel=s performance, >the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.=@ *Reed v. Sec=y. Fla. Dep=t. of Corr.*, 593 F.3d 1217, 1240 (11th Cir. 2010)(quoting *Bobby v. Van Hook*, 130 S.Ct. 13, 17 (2009)). A court must Ajudge the reasonableness of counsel=s conduct on the facts of the particular case, viewed as of the time of counsel=s conduct.@ *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to find that counsel=s performance was objectively unreasonable, the performance must be such that no competent counsel would have taken the action at issue. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

As observed by the Eleventh Circuit, the standard for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor
> is it the test even what most good lawyers would have done. We ask
> only whether some reasonable lawyer at the trial could have acted, in
> the circumstances, as defense counsel acted at trial. Courts also
> should at the start presume effectiveness and should always avoid
> second guessing with the benefit of hindsight. *Strickland* encourages
> reviewing courts to allow lawyers broad discretion to represent their
> clients by pursuing their own strategy. We are not interested in
> grading lawyers= performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

***Evidentiary Hearings***

On January 15, 2009 and November 1, 2011, evidentiary hearings were held in Albany, Georgia in this matter. (Docs. 486, 584). Edward Meeks, counsel for the Petitioner at trial and on appeal, testified on behalf of the Government. (Docs. 488, 595). At the January 2009 evidentiary hearing, Mr. Meeks testified that he has been engaged in the practice of law in the

state of Georgia since 1977.  (Doc. 488, p. 4).  In 2005 Mr. Meeks was retained to represent the

Petitioner in the underlying case, and represented Petitioner through the appeal of his convictions.

Underlying all of Petitioner's ineffective assistance of counsel claims under consideration

herein is the assertion that counsel Edward Meeks developed a conflict of interest during his

representation of the Petitioner.  During Petitioner's trial on the arson counts of the indictment,

John Dollar, subpoenaed to testify as a witness for the defense, had a phone conversation with

government witness Dennis Weaver, which was recorded by the government.  In this phone

conversation, Dollar urged Weaver not to testify, and suggested that Weaver get drunk, check

into a mental institution or otherwise avoid the subpoena to testify on behalf of the government.

The government disclosed the contents of this recording to defense counsel, including Meeks,

during a trial recess prior to Dollar's testimony.  After consulting with Dollar, other defense

counsel, and the Petitioner, Meeks chose not to call Dollar as a witness.

Petitioner maintains that the recorded conversation between Dollar and Weaver contained

or led to implications that Meeks was involved in a possible offer of compensation to Weaver not

to testify.  Petitioner further maintains that the threat of further exposure and adverse action being

taken against Meeks based on his alleged involvement in attempting to keep Weaver from

testifying caused Meeks to refuse to call Dollar as a witness, to cease investigation of any

audiotapes of conversations between Weaver and the Petitioner, and to file only a limited appeal

as to Petitioner's convictions and sentences.

## Conflict of Interest

In order to establish that counsel's conflict of interest violated the Sixth Amendment,

Petitioner must show both that counsel labored under an actual conflict of interest and that this conflict adversely affected the representation of the client. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "Where an ineffective assistance claim is based on a conflict of interest, a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." *McCorkle v. United States*, 325 Fed.Appx. 804, 808 (11th Cir. 2009) (internal citations omitted).

"[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler,* 446 U.S. at 350. "The conflict cannot be merely possible, speculative, or hypothetical." *McCorkle*, 325 Fed.Appx. at 808. Further, a court will not find an actual conflict of interest unless the Petitioner can "point to specific instances in the record to suggest an actual conflict or impairment of [counsel's] interest". *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987). The Petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to [himself]. *McCorkle*, 325 Fed.Appx. at 808. "We will not find an actual conflict unless a petitioner 'can point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *Gomez v. U.S.*, 258 Fed.Appx. 271 (11th Cir. 2007) (quoting *Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001)).

On May 11, 2006, after the second trial was underway but prior to the Petitioner's change of plea, Judge Lawson, the trial judge in this matter, held a telephone conference with Jim Crane and Leah McEwen, counsel for the government, Edward Meeks, counsel for the Petitioner, and Phil Cannon, counsel for Petitioner's co-defendant and father, Don Harrell.   (Doc. 494).

Attorney Meeks set out the facts underlying his concerns that Dollar and Weaver would be implicating Meeks in some type of obstruction charge. *Id.* at pp. 2-9. Meeks stated that his concerns about a possible conflict of interest arose after the jury was struck for the second trial, after Meeks read the transcript of the taped conversation between Dollar and Weaver and heard statements from other individuals regarding Meeks' alleged involvement. *Id.*

Meeks specifically told the Court:

> I understand Ms. McEwen and Mr. Crane had made representations or implications in some of the cases involving Dollar and Dowdy, suggesting that I may be involved in this obstruction of justice on Dollar. Now, I don't know what Mr. Dollar is saying now. I don't know whether he has pled. I don't know anything about that.
>
> But what it has done – and I've talked to several sources who heard things that have gone on in these other hearings that I've not attended – it's put me in a real bad situation. If Dollar and Weaver are going to testify and try to implicate me in some type of obstruction charge, then I don't think I can effectively represent [Marty] Harrell.

*Id.* at p. 8.

Attorneys for the government thereafter assured the Court and attorney Meeks that the government did not believe Meeks was guilty of any misconduct in regard to the Dollar/Weaver testimony issues. The Court noted that:

> the occasion for this call is Mr. Meeks' concern that his position and his effectiveness as counsel for Marty Harrell could be compromised as a result of some charge by the government in the nature of which has been discussed in this conversation, and I'm understanding you to say unequivocally that there is none, so we don't need to be concerned about that.
>
> MR. CRANE: Unequivocally, there is none.

*Id.* at pp. 12-13.

### First evidentiary hearing testimony

At the first evidentiary hearing herein, Edward Meeks testified regarding the allegation of a conflict of interest, and stated that John Dollar was subpoenaed by the defense to testify during Petitioner's first trial.  (Doc. 488, p. 8).  Prior to Dollar being called to testify for the defense, the government disclosed to Meeks and other defense counsel a tape-recorded conversation between Dollar and government witness Weaver.  *Id.*  Meeks testified as follows as to the substance of the Dollar/Weaver conversation:

> I think we played that tape in the courtroom, and the tape – in the tape Mr. Dollar makes a suggestion to Mr. Weaver that, um, you know, if he – he didn't have to appear in court, if he wanted to leave, he could leave, and made some comment that, you know, he'd go to the third neighbor.  . . . We were concerned to determine what that meant.  And then I spoke to Mr. Dollar about that, I said, we have a tape recording, was there a conversation between you and Weaver where you were suggesting Weaver didn't have to appear, and Mr. Dollar said, yes, he said, but I was really just kind of cutting up about it, but he said, I – I said, well, I've listened to the tape, and I said, you'll be cross examined on that.  So then I met with – Mr. Brimberry and I talked about it, and I met with – I remember talking to Marty about it, and I told Marty that I felt like that the ability to cross examine Mr. Dollar about that would not be in his best interest, and we reached the decision not to call him.
>
> . . .
>
> . . . through the first trial and the verdict, I never had any concern nor any suspicion that anybody ever was suggesting that I had anything to do with the conversation between Weaver and Dollar. In fact, if you read the tape – or read the transcript, as I recall, Dollar tells Weaver that – (inaudible) – what the truth was.  But when Dollar and all these other people got indicted that were involved in the first trial, there was just all kind of talk going on that because I had had conversations with Dollar.  So I talked to Mr. Harrell about it.  I said, look, if the government is taking the

position that I tried to influence Dollar, then I don't want you to think I'm more concerned about me than you, and I discussed that with him, and I said, if that's the case, then we need to make sure this gets aired out. That's why I had the conference with Judge Lawson. . . . the government said they had no concern about me and no allegation about me, and I said, as long as I know that, it's full speed ahead, and I told Mr. Harrell, I went back and said, look, the judge – we had the conference, everybody's satisfied, and I said, I have no concern about that, and he didn't have any concern about it either.

*Id.* at pp. 9, 14-15.

Meeks, when asked when he first heard his name mentioned in connection with the Dollar/Weaver tape, testified that he first heard his name mentioned when the tape recording was played at a recess during the first trial, but stated that:

I had no concern about me at that point. . . . My focus was from a strategy standpoint, do we need to put Dollar on the stand, knowing he might say this and this on our behalf, but knowing he's going to get cross examined on this by the government, and that was a call we all huddled on. . . . I think [in the] conversation between Dollar and Weaver about me . . . Dollar said, all Meeks wants to know is the truth.

*Id.* at pp. 27, 31.

At the first evidentiary hearing in this Court, Petitioner testified that Meeks "wanted to get the hell out of Thomasville and get away from you two [Crane and McEwen] people because he didn't want to go to jail and lose his law practice, not over these Harrells. That's what he told me." *Id.* at p. 109. As to the government's suggestion that the defense could not use John Dollar as a witness because the defense could not be certain what Dollar would say, Petitioner testified that "that's a factual occurrence of what happened". *Id.* at p. 118. At a pretrial hearing on April

11

12, 2006, the Petitioner made no mention to the Court of a Meeks' conflict when testifying as to

why Dollar was not called as a witness.  Petitioner testified that:

> John Dollar was removed from this proceeding because -- well, the
> government set him up, and they scared him off.
>
> We couldn't use him as a witness. We didn't know what was going
> to be said, something about twenty thousand dollars being offered
> to him.

Doc. 492, p. 76, ll. 6-11.

***Supplemental evidentiary hearing testimony***

At the supplemental evidentiary hearing held on November 1, 2011, Meeks again testified

that he:

> didn't know about [any potential implication of Meeks in
> misconduct with witness John Dollar] until after the trial.  In other
> words, the concern about the conflict wasn't until after the trial, the
> first trial, was concluded.  I think Mr. Dollar was indicted.  It was
> after the trial that that conversation with Judge Lawson took place.

(Doc. 595, p. 14).

The Petitioner testified that he:

> listened to the tape [of Dollar and Weaver], . . . but there was no
> transcript given, and you could barely understand that tape.  All you
> could hear Meeks [sic] and crooked and little bit of this and a bunch
> of scratching.  You couldn't understand a lot.  You get enough of it
> to know there was some monkey business going on, but you didn't
> know what.

*Id.* at p. 61.

Petitioner testified that Meeks' demeanor changed after he was allegedly threatened by the

government attorneys regarding Meeks' possible involvement with the Weaver testimony.

According to the Petitioner:

12

> [h]e [Meeks] was told he had something to do with witness tampering, and it made him mad. . . . And he knew that there was trouble. And he told me, I'm not going to jail for you damn Harrell's. [sic] I'm not putting John Dollar up there.

*Id.* at p. 62.

### *Actual conflict*

Upon review of the evidence before the Court, the Court finds that Petitioner has established only the presence of a potential conflict of interest for attorney Meeks in his representation of the Petitioner rather than an actual conflict of interest. "In assessing whether a conflict existed, we must be convinced that the conflict is actual, not merely hypothetical or speculative." *Buenoano v. Singletary*, 74 F.3d 1078, 1086 (11th Cir. 1996). Meeks' testimony in this proceeding as well as his statements to the Court in the May 11, 2006 telephone conference evidence his lack of awareness of any allegation that he was personally involved in wrongdoing with government witness Dennis Weaver until after the jury was struck in the second trial on the Hobbs Act charges. (Doc. 494, p. 7, ll. 5-25). Meeks received assurances from the government during the May 11, 2006 telephone conference before Judge Lawson that there were no allegations or charges of Meeks having engaged in misconduct in the Dennis Weaver testimony issue. *Id.* at pp. 12, 13. Meeks apparently initiated the telephone conference for the very purpose of clearing up the issue of whether he had a conflict of interest in his continued representation of the Petitioner, and was assured by the government that there was no basis for such a conflict. *Cf. Pegg v. U.S.*, 253 F.3d 1274 (11th Cir. 2001) (court found that actual conflict existed, as asserted by the government, based on actual evidence of defense counsel's privileged communications with co-conspirator).

13

Meeks therefore proceeded in his representation of the Petitioner through the change of plea and appeal process, having established on the record that he was not operating under a conflict of interest.  Petitioner has failed to show that at any of the identified times in the criminal litigation, to wit, the decision not to call John Dollar, the decision not to pursue investigation into audiotapes of Petitioner and Weaver, and the decision to limit the issues on appeal, attorney Meeks was operating under an actual conflict of interest.  *See Smith*, 815 F.2d at 1406. (Petitioner presented only conclusory allegations of attorney's conflict of interest, and failed to present any evidence showing that attorney had in fact learned relevant confidential information in prior representation).  "The burden is on petitioner in a habeas proceeding to prove that his conviction was unconstitutional", and "a speculative possibility of conflict" is not enough to satisfy this burden.  *Id.*

Petitioner challenges Meeks' actions and decisions in choosing not to call Dollar as a witness, not to pursue further investigation of the Weaver/Petitioner tapes, and to file an appeal raising only the issue of restitution.  Viewing Meeks' actions and decisions at the time he made the decisions, Meeks was unaware of any allegation of his personal involvement in any alleged wrongdoing between Dollar and Weaver at the time of the first two decisions, and he had been assured there was no such allegation at the time he filed an appeal on behalf of the Petitioner.  *See Strickland,* 466 U.S. at 690 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").  Although Meeks stated in the telephone conference before Judge Lawson that in presenting the Dollar tape, AUSA Crane "made some suggestion to Mr.

14

Brimberry (counsel for co-defendant Harrison) and I that we were trying to – I don't know – do something about Weaver's testimony, and we both were insulted, and we had words, and we walked off", Meeks' testimony at both evidentiary hearings makes it clear that Meeks did not perceive this to be a serious threat or implication of his involvement in wrongdoing with Dollar. (Doc. 494, p. 6; Docs. 488, 595). Meeks' testimony establishes that the general nature of communication among the lawyers at trial was often contentious.

> A (Meeks): [I]t was a testy trial. There was [sic] a lot of heated discussions between us and the government . . .
> . . .
> Q: When you say it was testy, it was testy between you as a defense lawyer and Mr. Crane and Ms. McEwen; is that right?
>
> A: Yeah, I mean, we were going at it.

Doc. 488 at pp. 29-30.

According to Meeks' testimony, which this Court finds to be credible, Meeks was aware only that he was mentioned in the recorded conversation as "wanting the truth", at the time the decision was made not to call Dollar to the stand to testify. (Doc. 595, p. 15). In regard to investigation of tapes of conversations between the Petitioner and Dennis Weaver, Meeks testified that he was repeatedly told by the government throughout the first trial that such tapes did not exist, and the record supports this testimony. (Doc. 488, pp. 26, 27; Doc. 492, pp. 66-67).

In regard to the allegation that Meeks was operating under a conflict of interest in filing Petitioner's appeal, and thereby reduced the issues on appeal to the bare minimum, the Court notes that Petitioner's Notice of Appeal was filed on August 29, 2006 (Doc. 366), the same day judgment was entered against Petitioner (Doc. 365). Petitioner's appellate brief was filed on February 14, 2007. (Doc. 501, p. 7). By these dates, the telephone conference with Judge

Lawson had already taken place, with it being clearly established on the record therein that Meeks did not have a conflict of interest in representing the Petitioner, based on the absence of allegation against Meeks as to his participation in any wrongdoing with Dollar and Weaver.  Accordingly, there has been no demonstration that Meeks' actions and decisions in filing an appeal on behalf of Petitioner were the result of interests inconsistent with those of the Petitioner.  *See Reynolds*, 253 F.3d at 1344 (petitioner did not establish counsel's actual conflict in the pre-trial stage, as record did not demonstrate that counsel acted inconsistently with petitioner's interests).

The Court finds that Meeks' explanations for his decisions are reasonable and supported by the overall record.  Such reasonable and factually supported explanations demonstrate the lack of an actual conflict herein.  Similarly, in *Quince v. Crosby*, 360 F.3d 1259, 1264 (11th Cir. 2004), a petitioner challenged his counsel's status as a special deputy as a conflict of interest.  The Eleventh Circuit determined that the petitioner failed to demonstrate an actual conflict of interest, as his counsel's special deputy status did not invest him with actual law enforcement authority, and the petitioner did not demonstrate a causal relation between any of counsel's actions and his special deputy status.   Although the petitioner argued that counsel feared losing his special deputy status if he zealously defended the petitioner, the petitioner could not point to any specific instances of conduct to support the claim.  The court credited counsel's explanation of his decision to avoid a jury trial as reasonable, based on the overwhelming evidence against the petitioner, and determined that the petitioner had not shown that counsel's decision was influenced by his special deputy sheriff status.

Similarly, in *Young v. Florida*, 2011 WL 3875412 (M.D.Fla. August 30, 2011), counsel

16

raised the issue of a conflict of interest before the trial court. The trial court found that no

conflict existed. Citing *Mickens v. Taylor*, 535 U.S. 162 (2002), the court noted that "[h]abeas

courts generally defer to the judgment of defense counsel regarding the existence or absence of a

disabling conflict." *Young*, 2011 WL 3875412 at *16 (citing *Mickens*, at 167-68). "[U]ntil . . . a

defendant shows that his counsel actively represented conflicting interests, he has not established

the constitutional predicate for his claim of ineffective assistance." *Mickens*, 535 U.S. at 175.; *see*

*also Ferrell v. Hall*, 640 F.3d 1199, 1244-45 (11th Cir. 2011) (petitioner offered only speculation

of a conflict based on attorney's failure to question witness on certain issues, while ample

evidence supported attorney's explanation for strategy regarding treatment of witness; no actual

conflict existed).

***Adverse effect***

Even assuming that Petitioner has shown an actual conflict of interest, Petitioner has not

demonstrated, for any of the alleged instances of ineffectiveness, that such a conflict had an

adverse effect on counsel's performance.

> To prove adverse effect, a habeas petitioner must satisfy three
> elements. First, he must point to some plausible alternative defense
> strategy or tactic [that] might have been pursued. Second, he must
> demonstrate that the alternative strategy or tactic was reasonable
> under the facts. . . he only need prove that the alternative possessed
> sufficient substance to be a viable alternative. Finally, he must show
> some link between the actual conflict and the decision to forgo the
> alternative strategy of defense. In other words, he must establish
> that the alternative defense was inherently in conflict with or not
> undertaken due to the attorney's other loyalties or interests.

*Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999) (internal citations
omitted).

"To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could

17

have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343.

In regard to the decision not to call John Dollar as a witness for the defense in Petitioner's first trial on the arson counts, the Petitioner has failed to show that the alleged actual conflict caused Meeks to forego an alternative strategy or tactic that was reasonable under the facts. Herein, the facts show that Dollar's credibility was severely impacted by the recorded conversation with Weaver, and that it would not have been reasonable to call Dollar to the stand, subject to cross examination on his recorded conversation with Weaver, evidencing Dollar's apparent attempts to keep Weaver from testifying. The alleged substance of Dollar's testimony, to wit, Weaver's alleged propensity to lie, Weaver's statements that Petitioner denied involvement in the arson, and Petitioner's wife's lack of credibility, does not establish that presenting such testimony, in the face of direct evidence of Dollar's lack of credibility and possible witness tampering, was a plausible, reasonable alternative.

Similarly, with Meeks' alleged failure to continue an investigation into the existence of audiotapes of conversations between Dennis Weaver and the Petitioner, the Petitioner has failed to show that Meeks failed to pursue a reasonable, plausible alternative as the result of the alleged conflict of interest. The record establishes that Meeks inquired into the existence of these tapes and was told they did not exist. (Doc. 488, p. 26). Continued pursuit of such tapes, without more, was not a reasonable alternative to halting this aspect of the investigation. (Doc. 492, pp. 66-68; Doc. 595, pp. 25, 84). The evidence before this Court, and as found by Meeks, does not reveal the existence of the tapes to which Petitioner continues to refer. Petitioner in fact admits

18

that he has yet to prove the existence of any such tapes.  (Doc. 618).  Moreover, the Petitioner

has not shown that Meeks' decision not to further investigate the existence of these tapes was the

result of any alleged conflict of interest.

In regard to Petitioner's assertion that Meeks failed to file an appeal on issues other than

restitution as a result of an actual conflict of interest, Petitioner has not established that Meeks

rejected a reasonable, alternative course of action.  By the time Meeks filed an appeal on

Petitioner's behalf, the conflict of interest issue had been addressed and found to be non-existent

by the trial court.  Moreover, Petitioner had signed a waiver of appeal rights in pleading guilty to

the Hobbs Act counts, which at the time his appeal was filed appeared to be in full force and

effect, preventing appeal of anything other than the Court's upward departure from the sentencing

guidelines on the arson counts.  (Doc. 488, p. 56).  Meeks testified and stated to the Court that he

did not believe this issue of upward departure was a viable enumeration of error on appeal.  Doc.

595, pp. 20-21; Doc. 386.  Petitioner's co-defendant Dexter Harrison did appeal the upward

departure from the Sentencing Guidelines by the sentencing court, but his conviction and sentence

were upheld.  (Doc. 488 at p. 54).

To the extent that the Petitioner asserts that Meeks should have reviewed the plea

transcript prior to filing an appeal, and that such review would have revealed issues regarding the

Petitioner's waiver of appeal, the Court notes that Meeks' appeal of the arson convictions would

not necessarily have involved or required review of the Petitioner's guilty plea to the Hobbs' Act

count.  As to any issues with Petitioner's waiver of appeal of the arson convictions, the Eleventh

Circuit found only that, without the transcript of the change of plea hearing in the appeal record,

19

it would not enforce the waiver in that appeal.  (Doc. 444, p. 8).   Thus, Petitioner has not

established that appeal of other issues was a plausible, reasonable alternative to Meeks' chosen

course of action.

Further, there is no merit to Petitioner's allegation that Meeks was fearful of prosecution

for witness tampering and therefore appealed only the restitution issue versus appealing other

issues, such as the admission of polygraph evidence.  If, as theorized by the Petitioner, Meeks was

motivated by a fear of prosecution, any appeal would have increased Meeks' exposure to and fear

of prosecution.

### *Strickland*

To the extent that the Petitioner brings his claims solely as ineffective assistance of counsel

claims, Petitioner has failed to establish that counsel's representation fell below an objective

standard of reasonableness or that his decisions resulted in prejudice to the Petitioner.   In order

to establish deficient performance of counsel, the performance must be such that no competent

counsel would have taken, or would have failed to take, the action at issue.  *Hall*, 611 F.3d at

1290.  Moreover, Petitioner must overcome the presumption that counsel's performance was

constitutionally adequate.  To do so, "a petitioner must not present evidence merely to refute the

presumption.  Rather, the petitioner must present evidence that outweighs the presumed evidence

of competence. . . . >where the record is incomplete or unclear about [counsel's] actions, we will

presume that he did what he should have done, and that he exercised reasonable professional

judgment.'" *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1239 (11th Cir.

2011) (quoting *Chandler v. United States*, 218 F.3d 1305, 1314, n.15 (11th Cir. 2000)).

A review of the totality of the evidence and testimony presented at trial and before this Court reveals that Petitioner has not shown he was prejudiced by Meeks' decision not to call Dollar as a witness, not to pursue investigation of the alleged Weaver tapes, and not to raise additional issues on appeal. Meeks' appellate advocacy must be judged in its entirety. *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991). As set out herein, Dollar's credibility was seriously injured by the recording of his conversation with Weaver, the alleged Weaver tapes have not been established to even exist, and other issues did not appear viable on appeal. The Sixth Amendment does not require appellate counsel to raise every non-frivolous issue on appeal. *Id.* "Indeed, the process of winnowing out weaker claims on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy." *U.S. v. Thrift*, 2005 WL 3052295 *3 (M.D. Fla. November 14, 2005). "[T]he [appellate] attorney need not advance every argument, regardless of merit, urged by the appellant. But the attorney must be available to assist in preparing and submitting a brief to the appellate court, and must play the role of an active advocate". *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Meeks' testimony establishes that he discussed the issue of appeal with the Petitioner and weighed the various available enumerations of error, but did not believe any issue other than the restitution issue presented a viable ground for appeal.

Petitioner has failed to present any evidence that rose to the level of constitutionally deficient performance. The record reflects that Meeks' decisions "f[ell] within the wide range of professional assistance . . . [and that] the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "To state the obvious: the [] lawyers, in every case, could have done something more or something different. So omissions are inevitable.... [T]he issue is

not what is possible or ➤what is prudent or appropriate, but only what is constitutionally

compelled.➡@*Chandler*, 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

### Conclusion

The Petitioner has failed to establish ineffective assistance of counsel at trial or on appeal,

either under the *Cuyler* standard or the *Strickland* standard.   WHEREFORE, it is recommended

that Petitioner➤s Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. ▪ 2255

(Doc. 465), Motion for an out-of-time appeal (Doc. 526), and Motion for Resentencing (Doc.

539) be **DENIED**.  Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to

this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN

FOURTEEN (14) DAYS after being served with a copy of this Recommendation.  Petitioner's

Motion to be placed in protective custody at Crisp County Detention Center (Doc. 474) and

Motion to have Jim Crane and Leah McEwen removed from the § 2255 proceeding (Doc. 550)

are  **DENIED** as moot.

The undersigned finds no substantial showing of the denial of a constitutional right.  28

U.S.C. ▪ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Therefore, it is

recommended that the Court deny a certificate of appealability in its Final Order.  If the Petitioner

files an objection to this Recommendation, he may include therein any arguments he wishes to

make regarding a certificate of appealability.

**SO ORDERED and RECOMMENDED**, this 19th day of April, 2012.

s/  ***THOMAS Q. LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE