# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

**MARTIN L. HARRELL,**

    Petitioner,

    v.                                        Action No. 1:07-cr-45 (HL)

**UNITED STATES OF AMERICA,**

    Respondent.

## ORDER

Before the Court is the Report and Recommendation of Magistrate Judge Thomas Q. Langstaff (Doc. 622) addressing Petitioner Martin L. Harrell's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to § 2255 (Doc. 465). For the reasons stated below, the Report and Recommendation is adopted.

    I.    **PROCEDURAL HISTORY**

Petitioner Martin L. Harrell ("Petitioner") was indicted on October 21, 2005, and charged with three counts of Hobbs Act violations, one count of interstate travel in aid of racketeering, one count of arson, one count of mail fraud, one count of conspiracy to commit arson and mail fraud, three counts of witness tampering, and one count of making misleading statements. (Doc. 65.) On February 21, 2006, the arson-related counts, which had been severed from the Hobbs Act-related counts, proceeded to trial. Petitioner was convicted of conspiracy to commit arson and mail fraud, witness tampering, arson, and

making misleading statements. (Doc. 223.) Thereafter, Petitioner pled guilty to one count of conspiracy to commit Hobbs Act violations. (Doc. 317.) As a part of the plea agreement, Petitioner waived his right to appeal the conviction of the arson counts, and the Government agreed to dismiss the remaining Hobbs Act violations. (Doc. 318.)

On August 17, 2006, Petitioner was sentenced to a total of 240 months in prison on both the arson and Hobbs Act convictions. (Doc. 358.) He was also ordered to pay $319,145.10 in restitution. (Doc. 358.) Petitioner filed a direct appeal on August 29, 2006 on the issue of the order for restitution (Doc. 366), which was upheld by the Eleventh Circuit in July 2007 (Doc. 444).

Petitioner filed this Motion to Vacate under § 2255 (Doc. 465) on August 11, 2008, alleging ineffective assistance of counsel at trial and on appeal. Specifically, Petitioner alleges that his trial and appellate counsel, Mr. Edward Meeks, suffered a conflict of interest. Petitioner contends that the conflict revolved around Mr. Meeks' alleged involvement in obstruction of justice. Mr. Meeks discovered this possible conflict when he read a transcript of a recorded conversation between Mr. John Dollar and Mr. Dennis Weaver, two potential witnesses. In the recording, Mr. Dollar and Mr. Weaver are conversing about the possibility of getting Mr. Weaver out of testifying at one of the proceedings in Petitioner's case. Mr. Meeks is mentioned by name in the conversation. Mr. Meeks informed the Court during a telephone conference call of the possibility of a conflict of interest that could arise if Mr. Meeks was involved in an obstruction

of justice investigation. (Doc. 494, p. 8.) Mr. Meeks stated that "[i]f Dollar and Weaver are going to testify and try to implicate me in some type of obstruction charge, then I don't think I can effectively represent [Petitioner]." During this call, the Government informed Mr. Meeks and the Court that there was no intent to charge Mr. Meeks with obstruction of justice. (Doc. 622, 12-13.)

Petitioner claims that Mr. Meeks, as a result of his potential conflict, altered his planned defense of Petitioner by excluding a prospective defense witness, Mr. Dollar; ceased investigating certain audiotapes of conversations between Petitioner and Mr. Weaver; and failed to file a direct appeal of Petitioner's jury conviction. (Doc. 465.)

## II. ANALYSIS

Petitioner's objection to the Recommendation of the Magistrate Judge is extensive, totaling almost 100 pages. (Doc. 644.) The objection includes allegations of nineteen errors in the Report and Recommendation of the Magistrate Judge, as well as five additional enumerations of error. These objections are analyzed below.

### A. **Petitioner's Allegations of Error Within the Report and Recommendation**

#### 1. **Objections 1 and 2**

Objections 1 and 2 challenge the recommendation of the Magistrate Judge that the Petitioner's Motion to Amend (Doc. 609), Motion to Strike (Doc. 610), Motion to Seal (Doc. 612), Motion to Adopt (Doc. 613), Motion for Production

(Doc. 614), and Motion to Produce (Doc. 615) be denied on the grounds that the Motions were not timely filed. In his objection, Petitioner claims that: (1) he did not have the opportunity to file these Motions any earlier than he did because he was unrepresented, and (2) based on the docket, he should be allowed to file the Motions because they were filed within days of the time when his current counsel, Mr. Melvin Horne, entered the case. Petitioner also claims that the Motions correspond with a *pro se* Motion to Amend (Doc. 562) filed earlier in the case and this Motion to Amend should relate back to the *pro se* motion.

The Court disagrees with Petitioner's contentions. As to the first claim, the Court does not agree that Petitioner was ever unrepresented in this case. On August 29, 2008, Judge G. Mallon Faircloth ordered the Federal Defenders of the Middle District of Georgia to represent the legal interests of Petitioner. (Doc. 470, p. 1.) Pursuant to this Order, Petitioner was represented by several different attorneys at the Federal Defenders Office, including Mr. Christopher Brian Jarrard, Mr. Morad Fakhimi, Ms. Nancy Trasande, and Ms. Cynthia Roseberry. Petitioner was continuously represented by the Federal Defenders Office until October 31, 2011, when he privately hired Mr. Paul Hamilton to represent him (Doc. 583) and Ms. Roseberry withdrew from the case (Doc. 586). Mr. Hamilton represented Petitioner until March 21, 2012 when Mr. Horne was substituted as Petitioner's counsel. (Doc. 606.) Based on this timeline, it is evident that Petitioner was never unrepresented. Though he may disagree with the actions taken by his counsel, specifically Ms. Roseberry, Petitioner cannot claim that he

4

was unrepresented at any time and did not have the opportunity to file a Motion to Amend through his counsel.

In regards to Petitioner's claim that the Motions were filed in a timely fashion, the Court cannot accept Petitioner's contention. Petitioner claims that March 30, 2012, the date on which the Motions were filed, was on or before the deadline for the Petitioner's reply brief according to the briefing schedule for Petitioner's Post-Hearing Brief for the Supplemental Hearing (*see* Doc. 607, granting an extension for the reply brief until March 30, 2012). However, Petitioner miscalculates the deadline for a Motion to Amend. The proper deadline for a Motion to Amend was September 16, 2011, as stated in Magistrate Judge Langstaff's Order dated August 3, 2011. (Doc. 553.) Petitioner was represented at that time and cannot claim that he did not have the opportunity to file a Motion to Amend at that time. Further, there is no support for the argument that the Motion should relate back to the previously-filed *pro se* motion.[1]

Because Petitioner has been continuously represented throughout the course of his § 2255 proceedings and because the deadline for a Motion to Amend was clearly set for September 16, 2011, this Court finds Petitioner's objections 1 and 2 to be without merit.

---

[1] In the case of Dexter Harrison, Petitioner's co-defendant, the Court has repeatedly declined to review *pro se* pleadings filed by the defendant when he was represented by counsel. Likewise, in this case, the Court will not accord any weight to Petitioner's *pro se* motions filed when he was represented by an attorney.

1. **Objection 4**

In objection 4, Petitioner clarifies the claims that he is making against Mr. Meeks, his trial counsel. The Court has taken note of Petitioner's articulation of these claims and will address both the conflict of interest issue and the appellate representation issue in this Order.

2. **Objection 5**

Objection 5 contains Petitioner's contention that the May 11, 2006 telephone conference call held between Mr. Jim Crane and Ms. Leah McEwen, counsel for the government; Mr. Meeks, counsel for the Petitioner; and Mr. Phil Cannon, counsel for Petitioner's co-defendant, was improper. Petitioner claims that his "absence was a critical failure and resulted in the denial of substantive Constitutional rights." (Doc. 644, p. 10.) The Court disagrees.

Under Federal Rule of Criminal Procedure 43, a criminal defendant must be present at: "(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." FED. R. CRIM. P. 43(a). However, under Rule 43(b)(3), a defendant is not required to be present during a conference or hearing on a legal question, defined as a proceeding which "involves only a conference or hearing on a question of law." FED. R. CRIM. P. 43(b)(3). The Court finds that the telephone conference call in which the parties were discussing the possibility of a conflict of interest is best classified as a conference on a question of law. Thus, Petitioner's presence was not required, and objection 5 is dismissed as being without merit.

3.  **Objections 7 and 11**

In objections 7 and 11, Petitioner argues about the existence of certain tapes of recorded conversations which trial counsel, Mr. Meeks, testified at the habeas hearing did not exist. (Doc. 488, p. 26.) Petitioner contends that Mr. Meeks, because of a conflict of interest, chose not to pursue and investigate these recordings. The Magistrate Judge in his recommendation found that "[t]he record establishes that Meeks inquired into the existence of these tapes and was told they did not exist." (Doc. 622, p. 18.) In response to the finding of the Magistrate Judge, Petitioner in objection 7 claims that the Court is too narrowly construing the word "tapes," and the definition should be expanded to include any listening device used to record conversations. Petitioner claims that the Government has been lying to Mr. Meeks, Mr. Fakhimi, and the Court by covering up the existence of listening devices.

Petitioner's theory is that the Government has intentionally been construing the word "tapes" in a narrow fashion, enabling them to retain the recorded conversations, which may be in a different format than a traditional "tape." Petitioner claims that the recorded conversations may exist on a CD or as a digital file, and that the Government, interpreting the word "tape" to be only a cassette tape, is intentionally avoiding providing these recordings to Petitioner. In objection 11, Petitioner again argues about the tapes, recognizing that while he "has not produced the tapes. … he has proven the existence of the tapes." (Doc. 644, p. 21) (emphasis omitted).

7

The Court does not agree with Petitioner that there is any flaw in the reasoning of the Magistrate Judge regarding the recordings in this case. The Magistrate Judge concluded, and this Court agrees, that there is sufficient evidence on the record to show that Mr. Meeks inquired into the existence of the tapes and reasonably concluded that they were not in existence. Mr. Meeks testified at the habeas hearing in front of Judge Faircloth that he "asked the government about it, we made a motion in front of the judge …, and everybody denied that there was any … tape recording of anything…" (Doc. 488, p. 27.) Upon such a determination, Mr. Meeks did not pursue the tapes further, which, in this Court's opinion, was not an error on the part of Mr. Meeks. Neither of Petitioner's objections relating to the possible existence of tapes of recorded conversations convinces this Court to disagree with the Magistrate Judge on this issue.

4. **Objection 10**

In objection 10, Petitioner challenges the Magistrate Judge's finding on the issue of the conflict of interest, claiming that Mr. Meeks' decision not to call potential witness John Dollar was not a reasonable decision. Petitioner argues that the recorded conversation between John Dollar and Dennis Weaver never makes any explicit statement about bribery, and only by "huge inferences and reading between the lines" can the reader determine that the parties are discussing a potential bribe. (Doc. 644, p. 17.) Petitioner alleges that if the transcript itself does not place Dollar's credibility into question, then there must

8

be something else that threatened Mr. Meeks and forced him to make the decision not to put Dollar on the stand. Petitioner claims that "[t]he [g]overnment threatened Mr. Meeks, not with the tape, but with some other information that neither the Petitioner nor the Court is privy to." (Doc. 644, p. 19-20.)

The Court finds Petitioner's theory in this objection without merit. The record is devoid of evidence of any scheme by the Government to undermine Petitioner's § 2255 motion by blackmailing attorneys and withholding evidence. Petitioner's objection is based more on a conspiracy theory than on reality, and does not persuade this Court that the Magistrate Judge was wrong in concluding that it was a reasonable decision not to put John Dollar on the stand.

5. **Objection 13**

In objection 13, Petitioner comes to the bold conclusion that the Magistrate Judge is not impartial in his review of Petitioner's Motion. Petitioner alleges that the Magistrate Judge is basing its decisions in Petitioner's case on the decisions made in the case of Dexter Harrison, Petitioner's co-defendant, instead of engaging in an independent review. Petitioner goes so far as to say that one of the findings of the Magistrate Judge "shocks" him. (Doc. 644, p. 23.)

What Petitioner fails to see is that the Magistrate Judge did not base his decision on Dexter Harrison's case. Instead, the Magistrate Judge only noted what happened in Mr. Harrison's case. There is no indication of bias or improper conduct on part of the Magistrate Judge, and this objection is without merit.

6. **Objections 3, 6, 8, 9, 12, 14, 15, 16, 17, 18 and 19**

Objections 3, 6, 8, 9, 12,[2] 14, 15, 16, 17, 18, and 19 all address Mr. Meeks' alleged failure to properly appeal Petitioner's case. In objection 3, Petitioner claims that the Strickland v. Wainwright, 777 F.2d 609 (11th Cir. 1985), standard articulated by the Magistrate Judge is inappropriate in this case. Instead, Petitioner contends that the proper standard is one that does not include a prejudice analysis.

The Court disagrees with the Petitioner that the Strickland standard is inapplicable in this case. It is true that the prejudice analysis does not always apply to ineffective assistance of counsel claims. However, the prejudice analysis is absent only in those situations where there has been a complete abandonment of a client or a total deprivation of the right to appeal. *See* Robinson v. Wyrick, 635 F.2d 757, 758 (8th Cir. 1981) (noting that "[i]n situations where ineffective assistance of counsel deprives a defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal.") In this case, there is no complete abandonment or total deprivation of the right to appeal, so the Court will apply the Strickland standard.

Under Strickland, to establish that counsel's representation was constitutionally defective, a petitioner must show that: (1) his counsel's representation was deficient, and (2) he was prejudiced by his counsel's alleged

---

[2] Objection 12, in addition to raising objections about the adequacy of the appeal, also raises the issues of collateral estoppel and res judicata. The Court finds that these issues are irrelevant and do not warrant further discussion.

deficient performance. Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985) (citing Strickland, 466 U.S. 668).

To show that counsel's representation was deficient, the petitioner must demonstrate that, in light of all the circumstances, "the identified acts or omissions were outside the wide range of professionally competent assistance." Id. "In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id.

The second prong of Strickland requires that the petitioner demonstrate that he was prejudiced by his counsel's deficient performance. To make this showing, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In this case, Petitioner makes numerous objections to the finding of the Magistrate Judge that Mr. Meeks' representation of his client was not deficient. In objections 6, 8, 12, 15, 18, and 19, Petitioner argues that Mr. Meeks failed to raise any ground on appeal, even when reasonable grounds for appeal existed. (See Doc. 644, p. 10 ("Attorney Meeks … raised no issues at all.") (emphasis omitted); Doc. 644, p. 22 (arguing that Mr. Meeks only appealed "the most trivial claim") (emphasis omitted); Doc. 644, p. 26 ("One would think that if Mr. Meeks would select a prohibited claim on appeal, he could do better than attacking the

11

restitution.") (emphasis omitted); Doc. 644, p. 32 ("[I]n the instant action, Mr. Meeks did not fail to raise every non-frivolous issue …, he failed to raise any issue.") (emphasis omitted)). In objection 8, Petitioner goes so far as to claim that Mr. Meeks' representation of Petitioner amounted to a complete abandonment of his client. (Doc. 644, p. 14.)

However, the Court disagrees with Petitioner's vehement arguments that Mr. Meeks failed to make any efforts on appeal and abandoned his client. Despite Petitioner's claims about Mr. Meeks' failure to file issues on appeal, Mr. Meeks did not neglect to file an appeal altogether, but instead filed an appeal only on the issue that he thought was plausible and reasonable - restitution. This falls within the scope of decisions entrusted to an attorney and given a high degree of deference.

In his well-reasoned recommendation, the Magistrate Judge lists those claims that Petitioner contends were appealable, including the alleged conflict of interest, the alleged existence of taped conversations, and the upward departure on Petitioner's sentence. The Magistrate Judge determined that the decision not to appeal these issues was covered under the protection of an attorney's chosen course of action, and this Court agrees. Mr. Meeks was acting within allowable limits when he determined not to appeal any issue but the issue of restitution.

Petitioner makes several other objections relating to the Magistrate Judge's finding that Mr. Meeks' performance was not deficient. First, in objection 14, Petitioner claims that Mr. Meeks should have reviewed the entire transcript of

12

the trial and the change of plea hearing to ensure there were no issues for appeal. Mr. Meeks admitted in the habeas hearing held before Judge Faircloth that he had not read the trial transcript because he "felt like [he] knew the Harrell trial fairly well." (Doc. 488, p. 54.) The Court is not convinced by Petitioner's argument that he had the constitutional right to a review of the transcript of his trial and change of plea hearing. While reviewing the transcript might be a good practice for an attorney, it is not constitutionally required.

Next, in objection 16, Petitioner claims that Mr. Meeks made two motions for mistrial during the trial, and that the acts that led up to these motions should have been grounds for appeal. Specifically, Petitioner claims that evidence of Petitioner's refusal to take a polygraph was admitted when it should not have been, and that 404(b) evidence was also allowed into evidence when it should not have come in. While motions for mistrial may constitute valid grounds for an appeal, there is no legal mandate providing that a motion for a mistrial provides the grounds for a mandatory appeal. Mr. Meeks was not under any obligation to appeal those issues to which he objected during trial. Instead, he was obligated to appeal only those issues that were reasonable and plausible on appeal. The evidence supports a finding that Mr. Meeks met this obligation.

Finally, in objection 17, Petitioner contends that Mr. Meeks fell below the standard set in <u>Anders v. State of Cal.</u>, 386 U.S. 738, 87 S. Ct. 1398 (1967). In <u>Anders</u>, the Supreme Court found that counsel's representation of a defendant was ineffective because counsel did not file an appellate brief, choosing instead

to advise the court by letter that there was no merit to the defendant's appeal. Id. at 739-40. The Court determined that counsel, who was appointed in that case, was ineffective, and that "[h]is role as an advocate requires that he support his client's appeal to the best of his ability." Id. at 744.

In the present case, Petitioner argues that, like the attorney in Anders, Mr. Meeks did not support his client to the best of his ability. However, the distinctions between Anders and the present case are numerous. First, Mr. Meeks did not submit a letter to the court and neglect to file a brief. Mr. Meeks filed a proper appellate brief that raised the valid issue of restitution. Further, unlike the attorney in Anders, Mr. Meeks did not abandon his client and force him to file *pro se*. Instead, Mr. Meeks worked with Petitioner to determine the best issues to appeal and then appealed those issues. The Court does not find Anders to be applicable in the present case.

All of these objections address the first prong of the Strickland analysis – whether the performance was deficient. None of the objections convince this Court to decline to adopt the finding of the Magistrate Judge that Mr. Meeks' representation was not deficient.

Petitioner makes one objection that deals with the second prong of the Strickland analysis – prejudice. In objection 9, Petitioner claims that, contrary to the finding of the Magistrate Judge, he suffered prejudice because of Mr. Meeks' allegedly deficient performance. However, Petitioner offers no new legal arguments showing there was prejudice. He simply claims that errors were made

14

by Mr. Meeks that caused Petitioner to suffer prejudice. This argument does not convince the Court that the Magistrate Judge was incorrect in concluding that Petitioner had not properly established the prejudice prong of the Strickland standard.

Based on the analysis above, the Court finds the specific objections of Petitioner to the recommendation of the Magistrate Judge to be without merit on the issue of Mr. Meeks' alleged failure to file a proper appeal.

### B. **Petitioner's Allegation that the Denial of the Motion to Amend was Improper**

The Court has already addressed the issue of the denial of the Motion to Amend in this Order. For those same reasons, Petitioner's allegation that the denial of this Motion was improper is deemed meritless.

### C. **Petitioner's Allegation that the Court Failed to Address New Arguments**

Petitioner claims that he has raised issues that have not been addressed substantively by this Court. Two of these issues involve the motions for mistrial made by Mr. Meeks and his failure to appeal on those bases. A third issue addresses the John Dollar tape, and a fourth issue deals with the alleged failure of the Government to deliver information to Petitioner on the Mullen family. The Court finds that the issues regarding the motions for mistrial and the John Dollar tape have been addressed sufficiently in this Order and do not warrant further discussion.

As to the issue regarding the government's failure to disclose information about the Mullen family, initially alleged by Petitioner in his post-hearing brief (Doc. 501), the Court finds that this issue was never properly raised. The grounds for relief alleged in Petitioner's initial § 2255 Motion to Vacate are based on ineffective assistance of counsel claims stemming from Mr. Meeks' alleged conflict of interest. Petitioner claims that Mr. Meeks, as a result of his conflict, altered his planned defense of Petitioner by excluding a prospective defense witness, John Dollar; ceased investigating certain audiotapes of conversations between Petitioner and prospective witness Dennis Weaver; and failed to file a direct appeal of Petitioner's jury conviction. Petitioner's claim about the government's failure to disclose certain information was not raised in a timely fashion, and no motion to amend was ever granted. Thus, the issue of the government's failure to disclose is not properly before this Court and the argument about the Mullen family is irrelevant. Petitioner's arguments that his petition should be amended have been addressed above and are found to be without merit.

D. **Petitioner's Allegation that the Court failed to address the Anders claim**

Petitioner claims that the Magistrate Judge did not address his Anders claim. However, this Court has distinguished the present case from Anders and

finds that no further analysis is necessary. Anders is inapplicable to the present case.

### E. Petitioner's Allegation that the Court failed to Rule on Petitioner's Motion for Declaratory Judgment

Petitioner alleges that the Court failed to rule on his Motion for Declaratory Judgment. (Doc. 629.) However, the Magistrate Judge addressed this Motion in an Order dated May 29, 2012. (Doc. 643.) In the Order, the Magistrate Judge denied the Motion for Declaratory Judgment, finding that the Motion was disallowed by Calderon v. Ashmus, 523 U.S. 740 (1998), which required an actual case or controversy before executing a declaratory judgment. The Magistrate Judge concluded that the "Petitioner's attempt to have the Court issue a declaratory judgment on a limited legal issue is barred, as such judgment would not resolve the case or controversy underlying this § 2255 motion."

The Motion for Declaratory Judgment was properly addressed, and Petitioner's argument is meritless.

### F. Petitioner's Allegation that the Denial of the Certificate of Appealability was Improper

"To obtain a [certificate of appealability] under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 483-84,

120 S. Ct. 1595 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 103 S. Ct. 3383 (1983)). This Court agrees with the finding of the Magistrate Judge that there has been no showing of the denial of a constitutional right in this case, and thus, a certificate of appealability ("COA") is denied. Petitioner argues that the <u>Anders</u> issue is a constitutional violation that warrants a COA, but as stated above, the Court has found that <u>Anders</u> is not relevant to this case. Thus, there is no <u>Anders</u> violation to justify the issuance of a COA, nor is there any evidence of other constitutional violations. The COA is denied.

### III. CONCLUSION

For the reasons stated above, the Report and Recommendation of the Magistrate Judge is adopted.

**SO ORDERED,** this 21st day of September, 2012.

*s/ Hugh Lawson*
HUGH LAWSON, SENIOR JUDGE

ebr